IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL SALAWU, | ) |
|           *Plaintiff*, | ) Case No. 2:24-cv-01424 |
| v. | ) Magistrate Judge Kezia O. L. Taylor |
| JOVANN DAY, et al., | ) |
|           *Defendants*. | ) |

**MEMORANDUM OPINION**

This case is before the Court[1] on the Petition for Review of Denial of Application for Naturalization pursuant to 8 U.S.C. § 1421(c) and Request for *de novo* Hearing ("Petition"). ECF No. 1. The Petition is filed by Michael Salawu ("Plaintiff"), a native and citizen of Ghana, and it seeks *de novo* judicial review of the denial of his application for naturalization by the United States Citizenship and Immigration Services ("USCIS"). The USCIS determined that Plaintiff was ineligible for naturalization after finding that he had not demonstrated that he was legally the spouse of a U.S. citizen at the time of his admission into the United States and was therefore not lawfully admitted for permanent residence. Defendants have moved for summary judgment and Plaintiff has filed a response in opposition thereto. For the following reasons, summary judgment will be granted in favor of Defendants.

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. ECF Nos. 11 & 18.

A. **Relevant Factual Background**

Plaintiff is a 47-year-old Ghanian native who obtained Lawful Permanent Residence ("LPR") status in 2012 and emigrated to the United States that same year. ECF No. 14 ¶ 1; ECF No. 19 ¶ 1. He currently resides in the Pittsburgh area. *Id*. On October 30, 2008, Plaintiff married Ruth Ann Woodson, a 70-year-old United States Citizen and a resident of Virginia, in a civil wedding ceremony in Accra, Ghana. *Id*. ¶¶ 2-3; *id*. ¶ 2. At the time of that marriage, Ms. Woodson was still married to Bobby Morton, who she had married in Virginia in 1981. *Id*. ¶ 4; *id*. ¶ 3. On February 4, 2009, Ms. Woodson and Mr. Morton obtained a Final Decree of Divorce from the Virginia state court. *Id*. ¶ 5; *id*. ¶ 4.

On March 2, 2009, Ms. Woodson submitted a Form I-130, Petition for Alien Relative, on behalf of Plaintiff. *Id*. ¶ 6; *id*. ¶ 5. On July 16, 2009, USCIS approved the Form I-130. *Id*. ¶ 7; *id*. ¶ 6. On March 8, 2010, Plaintiff applied for an IR-1, immediate relative immigrant visa, through the American Embassy in Ghana. *Id*. ¶ 8; *id*. ¶ 7. Plaintiff's IR-1 immigrant visa was approved on June 15, 2012, and he was admitted into the United States as a LPR on June 24, 2012. *Id*. ¶¶ 9-10; *id*. ¶¶ 7-8.

On December 1, 2021, Plaintiff submitted an N-400, Application for Naturalization, in which he noted that he and Ms. Woodson were married on October 30, 2008, and he claimed that he had maintained LPR status for more than the requisite five years. *Id*. ¶ 11; *id*. ¶ 9. On May 2, 2022, the USCIS issued a decision denying Plaintiff's application. *Id*. ¶ 12; *id*. ¶ 10. In finding that Plaintiff was not eligible for naturalization the USCIS found as follows: (1) Ms. Woodson was still married to Mr. Morton at the time Plaintiff married her on October 30, 2008, making Plaintiff's marriage to Ms. Woodson "bigamous" and not legally valid; (2) Plaintiff did not remarry

Ms. Woodson after her divorce from Mr. Morton in 2009; (3) Plaintiff was not Ms. Woodson's legal husband when Ms. Woodson filed her I-130 Petition for Alien Relative on Plaintiff's behalf; (4) Plaintiff was not eligible for the IR1 immigrant classification as a spouse of a U.S. Citizen at the time he was admitted into the United States; and therefore (5) Plaintiff failed to demonstrate that he had been lawfully admitted for permanent residence as required to qualify for naturalization. *See* ECF No. 15-3.

On May 31, 2022, Plaintiff filed with the USCIS a Form N-336, Request for a Hearing on a Decision in Naturalization Proceedings. ECF No. 14 ¶ 14; ECF No. 19 ¶ 12. On July 23, 2024, the USCIS reaffirmed its decision to deny Plaintiff's application for naturalization. *Id*. ¶ 15; *id*. ¶ 13.

Plaintiff filed his Petition in this case on October 10, 2024. ECF No. 1. Defendants were served and filed an Answer on December 16, 2024. ECF No. 7. They then filed a Motion for Summary Judgment on February 14, 2025, along with a Brief in Support thereof, a Concise Statement of Material Facts and an Appendix of exhibits. ECF Nos. 12-15. Plaintiff filed a Brief in Opposition on March 10, 2025, along with a Response to the Concise Statement of Material Facts. ECF Nos. 17, 19. A Reply was filed by Defendants on March 27, 2025. ECF No. 20.

B. **Legal Standard**

Summary judgment shall be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is

3

that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Loc. 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991). When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond his or her pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

**C. Discussion**

Plaintiff's Petition in this case seeks *de novo* review of the USCIS' decision denying his application for naturalization. *See* 8 U.S.C. § 1421(c) (A district court's review of naturalization denials "shall be *de novo*, and the court shall make its own findings of fact and conclusions of law.") Plaintiff argues that there exists a genuine dispute as to whether he has met the qualification

4

of being "lawfully admitted for permanent residence" to bar summary judgment in this case. Specifically, Plaintiff argues that prior decisions in this Circuit have incorrectly interpreted that phrase and he asks that this Court find the Fourth and Eleventh Circuit Courts of Appeals' understanding of that phrase more persuasive, as well as to consider the practical implications of forever holding a government's administrative error against an applicant for naturalization.

First, to be eligible for naturalization in the United States, an applicant must demonstrate that he was "lawfully admitted to the United States for permanent residence." 8 U.S.C. § 1429. "The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. § 1101 (a)(20). The Third Circuit has explained that the term "lawful admission" requires compliance with both substantive and procedural legal requirements. *See Gallimore v. Attorney General of U.S.*, 619 F.3d 216, 223 (3d Cir. 2010) (citing *In re Longstaff*, 716 F.2d 1439, 1441 (5th Cir. 1983)).

In *Gallimore*, the Third Circuit held that "an alien whose status has been adjusted to lawful permanent resident but who is subsequently determined in an immigration proceeding to have originally been ineligible for that status has not been 'lawfully admitted for permanent residence.'" *Id*. at 224-25 (internal quotations and citations omitted). The Third Circuit was clear that this determination applied regardless of whether the applicant's LPR status was not lawful "because the applicant procured it through fraud" or "because the applicant was not legally entitled to it for any other reason." *Id*. at 224; *see also In re Koloamatangi*, 23 I. & N. Dec. 548, 550 (BIA 2003) ("[A]n alien was not 'lawfully' admitted for permanent resident status if, at the time such status was accorded, he or she was not entitled to it."). This includes, as relevant here, a situation where

5

LPR status was obtained through administrative oversight or other agency error. *See Gallimore*, 619 F.3d at 224; *see also Savoury v. U.S. Atty. Gen.*, 449 F.3d 1307, 1317 (11th Cir. 2006) (noting that "[w]hat is lawful depends on the law and not on administrative inadvertence or error."); *Arellano-Garcia v. Gonzales*, 429 F.3d 1183, 1187 (8th Cir. 2005) (finding that the petitioner could not be deemed a "'lawfully admitted permanent resident' when he obtained permanent residence status through a mistake and was not otherwise eligible for the status adjustment.")

Defendants argue that the Third Circuit's holding in *Gallimore* bars this Court from granting Plaintiff any kind of relief, and, despite Plaintiff's argument that the Third Circuit incorrectly interpreted the phrase "lawfully admitted for permanent residence" in *Gallimore*, the Court finds that *Gallimore* is directly relevant and the proverbial "nail in the [Plaintiff's] coffin."

This Court's precedence is clear that, even if Plaintiff was erroneously or mistakenly granted LPR status, this error nevertheless undermines the lawfulness of his LPR status. The inescapable fact is that Plaintiff was not legally married to Ms. Woodson, which he used as the basis to gain an IR-1 visa, entry to the United States and LPR status. Although lawful procedure may have been followed by Plaintiff, the lawfulness of the procedure does not mean that he attained status as a LPR, and because Plaintiff cannot demonstrate that he was "lawfully admitted for permanent residence," as that phrase has been interpreted by the Third Circuit, there is no genuine issue of material fact as to his eligibility for naturalization.

The Court notes Plaintiff's attempts to persuade this Court that the Third Circuit, and others, have incorrectly interpreted the phrase "lawfully admitted for permanent residence." He relies on language in *Lanier v. U.S. Atty. Gen.*, 631 F.3d 1363 (11th Cir. 2011), wherein the Eleventh Circuit stated that the definition of "lawfully admitted for permanent residence . . .

6

describes a particular immigration status, without any regard for how or when that status is obtained." *Id*. at 1366.  Therefore, he states that this Court should not look to how his LPR status was obtained, only that it was obtained, and that he still maintains it because an immigration judge has not yet taken it away.  *Lanier*, however, stands for the unremarkable proposition that an alien who enters the country illegally, and then later obtains an adjustment, has not been admitted to this country as an alien lawfully admitted for permanent residence.[2]  It does not undermine the premise that an alien is lawfully admitted for permanent residence only if he or she is in strict compliance with the procedural and substantive legal requirements at the time LPR status was granted, a premise that is actually reiterated by the Fourth Circuit in *Azumah v. United States Citizenship and Immigration Services*, 107 F.4th 272 (4th Cir. 2024), yet another case Plaintiff cites to persuade the Court of his position.  *See id*. at 274 ("A noncitizen is regarded as having been 'lawfully' admitted for permanent resident status only if he was legally entitled to that status when it was granted.")  As previously explained, Plaintiff was not legally entitled to LPR status when it was granted, and therefore he was never lawfully admitted for permanent residence to be eligible for

---

[2] *Lanier* involved an interpretation of the Immigration and Nationality Act's ("INA") waiver of removal statute, INA § 212(h), 8 U.S.C. § 1182(h).  In that case, the alien was subject to removal based on her conviction for an aggravated felony and a conviction involving moral turpitude.  *Lanier*, 631 F.3d at 1365.  The alien sought to file an emergency waiver of removability under § 212(h) of the INA on the grounds that her daughter, a U.S. citizen, would suffer hardship if the United States removed her.  *Id*.  The Immigration Judge ("IJ") and Board of Immigration Appeals ("BIA") ruled that her conviction for an aggravated felony rendered her statutorily ineligible to apply for § 212(h) waiver.  *Id*.  The statute they relied upon provides in relevant part that "[n]o waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if . . . since the date of such admission the alien has been convicted of an aggravated felony." 8 U.S.C. § 1182(h).  The Eleventh Circuit, however, disagreed with both the IJ and BIA and held that the plain language of § 212(h) does "not apply to those persons who . . . adjusted to lawful permanent resident status while already living in the United States." *Id*. at 1367.

naturalization. For this reason, the Court finds that Defendants are entitled to summary judgment.

A separate order will be entered.

Dated: August 14, 2025.

/s/ Kezia O. L. Taylor
Kezia O. L. Taylor
United States Magistrate Judge


Cc: All counsel of record
(*via CM/ECF electronic mail*)